**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

ANGELA NOVAK,

    Plaintiff,

        v.

BOROUGH OF DICKSON CITY,
ROBERT WILTSHIRE, ANTHONY
GALLIS, WILLIAM BOTT, and PETER
NOVAJOSKY,

    Defendants.

CIVIL ACTION NO. 3:05-CV-0442

(JUDGE CAPUTO)

**MEMORANDUM**

Presently before the Court is Defendants' Motion for Summary Judgment (Doc. 24).  For the reasons set forth below, the Court will grant Defendants' motion in part and deny it in part.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

**BACKGROUND**

Angela Novack was hired by the Borough of Dickson City ("Dickson City") as a part-time police officer in 2003.  (Doc. 25, ¶ 43; Doc. 27, ¶ 43.)  Plaintiff, as a part-time police officer, was not hired through the civil service process.  (Doc. 25, ¶ 44; Doc. 27, ¶ 44.)  Defendants submitted evidence that Plaintiff was instead appointed by the Dickson City Borough Council ("Council").  (Doc. 25, ¶ 15, Ex. C at 8-9; Ex. G.)

With regard to Plaintiff's appointment, Defendants submitted evidence that on January 10, 2003, Chief of Police, William Stadnitski sent a letter to then Council President Fred Joseph recommending Plaintiff for appointment for one year.  (Doc. 25, Ex. D.)  The letter states in relevant part:

1

> I respectfully request the following officers be appointed
> Part Time Police *for the year 2003* for the Borough of
> Dickson City.
>
> &ast; &ast; &ast;
>
> Angela Novack          953 Lincoln St., Dickson City, Pa.

(Doc. 25, Ex. D) (emphasis added).  Defendants further submitted evidence that on January 13, 2003, the Council voted to approve Chief Stadnitski's recommendation. (Doc. 25-10, Ex. H.)

In January 2004, a new majority on the Council was elected.  (Doc. 33-2, Ex. C, at 77-78.)  Plaintiff submitted evidence that this majority included Defendants Wiltshire, Gallis, Novojasky, and Bott ("new majority").  (Doc. 33-2, Ex. C, at 78.)

Defendants submitted evidence that on January 12, 2004, following the Council elections, Chief Stadmitski sent a letter to the new Council President, Robert Wiltshire, recommending that Plaintiff be re-appointed as a part-time police officer.  (Doc. 25, Ex. E.)  On January 13, 2004, the Council voted against Chief Stadmitski's recommendation. (Doc. 25-12, Ex. J.)  Furthermore, on January 5, 2004, the Council failed to include Plaintiff's name in the list of individuals hired as part-time police officers, and the Council also did not include Plaintiff in the list of officers hired at the meeting on January 29, 2004.  (Doc. 25-12, Ex. I, Ex. L; Doc. 27, ¶ 8.)

Plaintiff contends that the Council's failure to rehire her was due to her political support of the previous majority on the Council ("outgoing majority") and her open opposition to the new majority.  In support of her contentions, Plaintiff submitted evidence that signs supporting the outgoing majority were displayed in front of the house in which she resides, and that Plaintiff had witnessed Defendant Gallis driving by her house on numerous occasions.  (Doc. 33-4, at 77.)  Plaintiff also submitted evidence that she

2

distributed fliers supporting the outgoing majority.  (Doc. 33-4, at 36.)

In addition, Plaintiff submitted evidence that prior to the election, on February 18, 2003, Plaintiff's mother, Sophia Novack, submitted a letter to the editor of the Scranton Times regarding the political activities in Dickson City.  (Doc. 31, Ex. F.)  Plaintiff further submitted evidence that Defendants Wiltshire, Bott, and Gallis responded to Sophia Novack's letter and mentioned Plaintiff in their response.  The letter states in relevant part:

> . . .Apparently Sophia Novack would like for her husband to keep his job as borough manager.  He is a school director and Sophia Novack has a job at the school district. Her daughter was just hired as a policewoman in Dickson City borough. Seems like the family has a lot of local government jobs. Is Sophia Novack trying to save her husband's political appointment job? So much for "Never bite the hand that feeds you".

(Doc. 32-2, Ex. G.)  Furthermore, Plaintiff submitted evidence that after the election supporters of the new majority drove past the front of Plaintiff's home honking their horns. (Doc. 33-4, at 71.)

On March 1, 2005, Plaintiff filed a Complaint.  (Doc. 1.)  On April 4, 2005, Defendants filed a motion to dismiss Count III of Plaintiff's complaint.  (Doc. 7.)  The Court granted Defendants' motion on May 12, 2005.  (Doc. 12.)  Then, on January 30, 2006, Defendants filed the present motion for summary judgment.  (Doc. 24.)  This motion is fully briefed and ripe for disposition.

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

3

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law.  Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one.  *See id.* at 248.   An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party."  *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law.  *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983).  The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party.  *See White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988).  Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the

material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law.  *See Anderson*, 477 U.S. at 256-257.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).  In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

**DISCUSSION**

**1.      Procedural Due Process**

To establish a cause of action for a procedural due process violation, Plaintiff must first prove that a person acting under color of state law deprived her of a protected property interest; and second, she must show that the procedures available to her failed to provide her with due process of law.  *See, Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000).

**a.      Protected Property Interest**

To have a property interest in a job, a person must have a legitimate entitlement to such continued employment. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).  State law determines whether such a property right exists. *Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005).  In Pennsylvania, public employees have an "at-will status and are subject to summary removal by the employing agency." *Haynes v. Logan Assistance Corp.*, No. 89-3952, 1990 U.S. Dist. LEXIS 1145, at *7 (E.D. Pa. 1990) (citing *Cooley v. Pennsylvania Housing Finance Agency*, 830 F.2d 469, 471 (3d Cir. 1987).

5

However, at-will employees can demonstrate a property interest in retaining their jobs by showing an enforceable expectation of continued employment or some guarantee of continued employment extended by the employing municipality.  *Shoemaker v. City of Lock Haven*, 906 F. Supp. 230, 233 (M.D. Pa. 1995).  A "for-cause" termination provision in an employment agreement may establish a protected property interest.  *Linan-Faye Constr. Co. v. Housing Auth.*, 49 F.3d 915, 932 (3d Cir. 1995).

In the present case, Defendants argue that part-time police officers are appointed year-to-year by the Council and, as such, Plaintiff was an at-will employee who lacked a protected property interest in her employment.  Conversely, Plaintiff argues that her employment could only be terminated in accordance with the "just cause" provision of the Collective Bargaining Agreement ("CBA") between Dickson City and the Dickson City Police Department Bargaining Unit, and as such, she had a protected property interest in her continued employment.  For the following reasons, I find that Plaintiff has failed to establish a genuine issue of material fact with respect to the annual reappointment of part-time officers in Dickson City.  As such, Plaintiff has failed to establish that she had an enforceable expectation or guarantee of continued employment extending beyond the year for which she was appointed.

i.    **Year-to-Year**

Defendants submitted evidence that part-time police officers for Dickson City are appointed annually by the Council.  (Doc. 25, Ex. C, at 8, Ex. D, Ex. E, Ex. H.) Particularly, Defendants submitted evidence that the Chief Stadnitski, makes a recommendation to the Council as to which individuals should be hired as part-time

6

police officers for that year.  (Doc. 25, Ex. C, at 37-38.)  With regard to Plaintiff,

Defendants submitted evidence that Chief Stadnitski sent a letter to then Council

President Fred Joseph recommending Plaintiff for appointment on January 10, 2003.

(Doc. 25, Ex. D.)  The letter states in relevant part:

> I respectfully request the following officers be appointed
> Part Time Police *for the year 2003* for the Borough of
> Dickson City.
>                     * * *
> Angela Novack      953 Lincoln St., Dickson City, Pa.

(Doc. 25, Ex. D) (emphasis added).  Defendants further submitted evidence that on

January 13, 2003, the Council voted to approve Chief Stadnitski's recommendation.

(Doc. 25-10, Ex. H.)  The Minutes of the Council meeting read in relevant part:

> Motion # 3. . .to hire the part time Police Officers *for 2003*
> as follows.
>                     * * *
> Angela Novak      953 Lincoln St., Dickson City
>                     * * *
> On Roll Call   6 Yes on all, 1 Yes except Angela Novack,
> and John Sobieski.  Mr. Gallis

(Doc. 25-10, Ex. H) (emphasis added).

Next, Defendants submitted evidence that on January 12, 2004, Chief Stadmitski

sent a letter to Council President Robert Wiltshire recommending that Plaintiff be re-

appointed.  (Doc. 25, Ex. E.)  The letter states in relevant part:

> I respectfully request the following officers be re-
> appointed Part Time Officers for the year 2004 for the
> Borough of Dickson City.
>                     * * *
> Angela Novack      953 Lincoln St., Dickson City, Pa.

(Doc. 25, Ex. E).  On January 13, 2004, the Council voted against Chief Stadmitski's

recommendation.  (Doc. 25-12, Ex. J.)  Furthermore, the Council had not included

Plaintiff's name in the list of individuals hired at the meeting on January 5, 2004, or the meeting held on January 29, 2004.  (Doc. 25-12, Ex. I, Ex. L.)

Although Plaintiff argues that part-time police officers for Dickson City are covered by the CBA, she fails to submit evidence demonstrating a genuine issue of material fact as to whether the Coucil's approval was necessary for her continued employment. Stated differently, Plaintiff argues that the Council should have given its approval absent just cause to deny Plaintiff's re-appointment, but she fails to submit evidence demonstrating that the Council's approval was unnecessary for her continued employment.[1]  As such, Plaintiff has failed to establish that she had an enforceable expectation or guarantee of continued employment extending beyond the year for which she was appointed.  Therefore, Plaintiff does not have a protected property interest in her continued employment and I will grant Defendants' motion with regard to Plaintiff's due process claims.

**2.      First Amendment Retaliation Claim: Freedom of Association**

In *Elrod v. Burns*, 427 U.S. 347 (1976), the Supreme Court recognized that a public employee who alleges that she was not re-hired because of her partisan political affiliation or nonaffiliation states a viable claim under § 1983 that her First Amendment rights have been violated.  In order to succeed on her claim, Plaintiff must prove: (1) she worked for a public agency in a position that does not require a political affiliation; (2) she

---

[1]      Assuming arguendo that part-time police officers are covered by the "just cause" provision of the CBA, the protection afforded such officers by the CBA against arbitrary termination during their appointment need not also grant those officers an expectation that their employment would continue beyond the term for which they were appointed.

maintained an affiliation or nonaffiliation with a political party; and (3) her political

affiliation or nonaffiliation was a substantial or motivating factor in the adverse

employment decision.  *Goodman v. Pa Tpk. Comm'n,* 293 F.3d 655, 663-64 (3d Cir.

2002) (citations omitted).  "Finally, if the above elements are satisfied, the employer 'may

avoid a finding of liability by demonstrating by a preponderance of the evidence that it

would have made the same decision even in the absence of the protected affiliation.'" *Id.*

at 664 (quoting *Robertson v. Fiore*, 62 F.3d 596, 599 (3d Cir. 1995)).

In the present case, Defendants acknowledge that Plaintiff worked in a position

that does not require political affiliation, however, they contend that Plaintiff has failed to

demonstrate that she maintained a political affiliation or that such affiliation was a

substantial or motivating factor in Defendants' decision not to re-hire Plaintiff.  For the

following reasons, I disagree with respect to Defendants Wiltshire, Gallis, and Bott.

### a.    Wiltshire, Gallis, and Bott

Plaintiff submitted evidence that signs supporting the outgoing majority were

displayed in front of the house in which she resides, and that Plaintiff had witnessed

Defendant Gallis driving by her house on numerous occasions.  (Doc. 33-4, at 77.)

Further, Plaintiff submitted evidence that she distributed fliers supporting the outgoing

majority.  (Doc. 33-4, at 36.)

In addition, Plaintiff submitted evidence that her mother, Sophia Novack, wrote a

letter to the editor of the Scranton Times concerning the political activities occurring in

Dickson City.  (Doc. 31, Ex. F.)  Plaintiff further submitted evidence that Defendants

Wiltshire, Bott, and Gallis responded to Sophia Novack's letter and mentioned Plaintiff in

9

their response.  The letter states in relevant part:

> . . .Apparently Sophia Novack would like for her husband to keep his job as borough manager.  He is a school director and Sophia Novack has a job at the school district. Her daughter was just hired as a policewoman in Dickson City borough. Seems like the family has a lot of local government jobs. Is Sophia Novack trying to save her husband's political appointment job? So much for "Never bite the hand that feeds you".

(Doc. 32-2, Ex. G.)  Furthermore, Plaintiff submitted evidence that after the election supporters of the new majority drove past the front of Plaintiff's home honking their horns. (Doc. 33-4, at 71.)

Finally, in addition to the above, Plaintiff has also submitted evidence of temporal proximity between the election and Defendants' decisions not to re-hire Plaintiff. Particularly, Plaintiff submitted evidence that the new majority took office in January 2004, and Plaintiff was not re-hired at the first meeting on January 5, 2004 or at the meeting on January 29, 2004.  (Doc. 25, ¶¶ 48, 52, Ex. L, Ex. I; Doc. 33-2, Ex. C, at 78.)

The evidence presented, if believed, is sufficient for a reasonable jury to determine that Plaintiff maintained a political affiliation, Defendants' knew of that affiliation, and Plaintiff's affiliation was a substantial or motivating factor in Defendants' decision not to re-hire Plaintiff.  As such, Defendants' motion will be denied with respect to Plaintiff's First Amendment claims against Defendants Wiltshire, Gallis, and Bott.

**b.    Novajosky**

Plaintiff, however, has failed to submit evidence demonstrating that Defendant Novajosky was aware of Plaintiff's political affiliation.  As such, Plaintiff has failed to fulfill her burden of demonstrating evidence sufficient to create a triable issue that her protected activity was a substantial or motivating factor in Defendants' alleged retaliation.

*See Doyle*, 429 U.S. at 287.  Therefore, Defendants' motion will be granted with respect to Plaintiff's First Amendment claims against Defendant Novajosky.

**3.     Qualified Immunity**

Defendants also argue that they are entitled to qualified immunity from Plaintiff's remaining claims because the relevant law was not clearly established.  I disagree.

The doctrine of qualified immunity provides "government officials performing discretionary functions . . . [a shield] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A defendant has the burden to establish that he is entitled to qualified immunity. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 142 n.15 (3d Cir. 2001).  To determine whether a particular defendant is entitled to the protections of qualified immunity, the Court must first determine whether a constitutional violation has occurred.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Then, the Court must determine if the constitutional right at issue was clearly established at the time of the alleged violation.  *Id.*  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [defendant] that his conduct was unlawful in the situation he confronted." *Id.*, at 202.  Qualified immunity is an objective question to be decided by the Court as a matter of law.  *Doe v. Groody*, 361 F.3d 232, 238 (3d Cir. 2004).

In the present case, Plaintiff's first amendment rights at issue in Plaintiff's remaining claims were clearly established.  Therefore, I will deny Defendants' motion with regard to their claims for qualified immunity.

**CONCLUSION**

First, Plaintiff has failed to establish a genuine issue of material fact with respect to the annual reappointment of part-time officers in Dickson City.  As such, Plaintiff has failed to establish that she had an enforceable expectation or guarantee of continued employment extending beyond the year for which she was appointed.  Therefore, I will grant Defendants' motion with regard to Plaintiff's due process claims.

Second, Plaintiff has submitted evidence that, if believed, is sufficient for a reasonable jury to determine that: (1) Plaintiff maintained a political affiliation; (2) Defendants' knew of that affiliation; and (3) Plaintiff's affiliation was a substantial or motivating factor in Defendants' decision not to re-hire Plaintiff.  As such, Defendants' motion will be denied with respect to Plaintiff's First Amendment claims against Defendants Wiltshire, Gallis, and Bott.

Plaintiff, however, has failed to submit evidence demonstrating that Defendant Novajosky was aware of Plaintiff's political affiliation.  As such, Defendants' motion will be granted with respect to Plaintiff's First Amendment claims against Defendant Novajosky.

Finally, Defendants are not entitled to qualified immunity from Plaintiff's remaining claims.  As such, Plaintiff's First Amendment retaliation claims concerning her freedom of association will remain.

An appropriate Order will follow.


 April 19, 2006                                      /s/ A. Richard Caputo
Date                                                      A. Richard Caputo
                                                            United States District Judge

12

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

ANGELA NOVAK,

      Plaintiff,

        v.

BOROUGH OF DICKSON CITY, et al.,

      Defendants.

CIVIL ACTION NO. 3:05-CV-0442

(JUDGE CAPUTO)

## <u>ORDER</u>

    **NOW**, this _____19th_____ day of April, 2006, **IT IS HEREBY ORDERED** that

Defendant's Motion for Summary Judgment (Doc. 24) is **GRANTED in part** and **DENIED**

**in part**:

    (1)    Defendant's motion is **GRANTED** insofar as it seeks summary judgment
           with respect to:

           (a)    Plaintiff's due process claims; and

           (b)    Plaintiff's First Amendment retaliation claims against Defendant
                Novajosky.

    (2)    Defendant's motion is **DENIED** with respect to:

           (a)    Plaintiff's First Amendment retaliation claims against Defendants
                Wiltshire, Gallis, and Bott; and

           (c)    Qualified Immunity from Plaintiff's remaining claims.


             _/s/ A. Richard Caputo_____
             A. Richard Caputo
             United States District Judge